UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
JOSEPH WATSON,
                               :
           Petitioner,              REPORT & RECOMMENDATION
                               :
      -against-                     02 Civ. 0818 (DAB)(MHD)
                               :
STATE OF NEW YORK, Executive
Department, Division of Parole, :

           Respondent.     :
-------------------------------x

TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:


     Petitioner Joseph Watson seeks a writ of habeas corpus to
challenge his 1998 convictions in the New York State Supreme Court,
Bronx County, on charges of grand larceny in the third degree and
criminal possession of stolen property in the fourth degree. On
April 16, 1998 the court sentenced petitioner, as a second felony
offender, to concurrent terms of three and one-half to seven years
and to two to four years, respectively, on these two counts. The
court then conducted a hearing on July 6, 1998, at which it also
ordered petitioner to pay restitution in the amount of $9,000.00
and stated that if he failed to do so, he was to serve the full
seven years of his prison sentence.


     Petitioner presses four grounds to challenge his conviction
and sentence. First, he asserts that the court's imposition of a
mandatory seven-year term in the event that he failed to pay

1

restitution constituted a violation of his Fifth Amendment rights under the Double Jeopardy Clause. (Petition for Habeas Corpus ("Pet.") at 3-5). Second, he complains of prosecutorial misconduct because a witness who testified before the grand jury allegedly lied during her testimony and the prosecutor did not disclose exculpatory information that would have revealed the falsity of the testimony. (Id. at 5-6). Third, he asserts that the charges were filed in the wrong court -- in violation of his due process rights -- since all of the events in question had taken place in Manhattan. (Id. at 7). Finally, petitioner argues that the State's evidence did not prove his guilt beyond a reasonable doubt. (Id. at 8-9).

    Respondent opposes the petition. It asserts that Watson never exhausted his state-court remedies with respect to the Double Jeopardy claim and that it is now procedurally barred. Alternatively, respondent contends that the claim is meritless. (Respt.'s Mem. at 5-10). Respondent next argues that the prosecutorial-misconduct allegations are unexhausted and procedurally barred, and in any event not cognizable in a habeas proceeding. (Id. at 11-13). As for the due-process argument based on the location of the trial, respondent argues that asserted improper venue does not trigger any constitutional protection, and hence is not cognizable in a habeas proceeding. (Id. at 14).

2

Finally, respondent urges that petitioner's challenge to the sufficiency of the evidence is unexhausted, procedurally barred, and meritless. (Id. at 15-17).

For the reasons that follow, we conclude that petitioner's claims are either procedurally barred or meritless or both. We therefore recommend that the writ be denied and the petition dismissed with prejudice.

I. Prior Proceedings

The charges against Watson stemmed from two fraudulent schemes. One was based on his disposal of a number of travelers' checks stolen by his wife, Robin Watson, when she worked as the head teller at a branch of the Chase Manhattan Bank. The other involved a scheme by which he defrauded his girlfriend, Ms. Roslyn Bryant, of $9,000.00 by falsely telling her that he needed the money to arrange for her rental and furnishing of an apartment that in fact was not available to her.

A Bronx County grand jury returned an indictment charging Watson with single counts of grand larceny in the third degree and criminal possession of stolen property in the fourth degree. (Tr. 677, 696-97). He went to trial before the Hon. Robert Seewald and

3

a jury in January 1998. At the conclusion of the trial, the jury returned verdicts of guilty on both charges. (Tr. 710-13).

On April 16, 1998, the court sentenced Watson as a second felony offender, and imposed concurrent indeterminate prison terms of three and one-half to seven years and two to four years, respectively, on these two charges. (Affidavit of Ass't District Att'y Raffaelina Gianfrancesco, sworn to May 20, 2002, at ¶ 5; Pet. at tenth page (form SC-CR-5, dated Apr. 16, 1998)). On July 6, 1998, the judge also ordered petitioner to pay restitution in the amount of $9,000.00 and specified that if Watson failed to do so, he should serve the full seven-year sentence. (Gianfrancesco Aff. at ¶ 5; Pet. at eleventh page (form SC-CR-5, dated July 6, 1998)).

Following petitioner's conviction, he filed no fewer than three post-trial motions to challenge the result of the trial. All were unsuccessful.

By pro se section 440.10 motion dated June 12, 1998, Watson sought to vacate the judgment. In doing so he simply underlined four of seven possible grounds listed in a form notice of motion. These grounds were as follows: (1) "Duress, misrepresentation, or fraud on the part of the Court or Prosecutor"; (2) "Material evidence known by the prosecutor or court to be false before

judgment"; (3) "Material evidence obtained contrary to constitutional provisions"; and (4) "Judgment was obtained in violation of defendant's constitutional rights." (Gianfrancesco Aff. at ¶ 6 & Ex. 1). The court denied this motion on July 12, 1998, observing simply that Watson's papers did "not contain sworn allegations substantiating or tending to substantiate all the essential facts." (Id. at ¶ 7 & Ex. 2).

Watson filed a second pro se section 440.10 motion on July 14, 1998. He again listed misrepresentation and fraud by the prosecutor, based on the assertion that "an offense having been committed at an identifiable location ought to be prosecuted within the county of it[s] commission." (Id. at ¶ 8 & Ex. 3). He also asserted that evidence had been obtained by the State in violation of the Sixth and Fourteenth Amendments, and that the Bronx County Supreme Court lacked jurisdiction because the crimes had been committed in Manhattan and Queens. (Id.). On September 1, 1998, Justice Seewald denied this motion because Watson had failed to offer evidence to substantiate his grounds and also because his claims were reviewable on direct appeal from the judgment. (Id. at ¶ 9 & Ex. 4).

On or about January 8, 1999, Watson filed a third section 440.10 motion. He first asserted that the indictment was defective

because he had had no knowledge or possession of the stolen travelers' checks. (Gianfrancesco Aff. at ¶ 10 & Ex. 5). He also reiterated his claim that the trial court had lacked jurisdiction because the crime had not been committed in the Bronx, and in addition he argued that the evidence before the grand jury had been insufficient to justify the return of the indictment. (Id.). The court denied this motion on February 1, 1999, stating that Watson's claims were properly dealt with on direct appeal and that in any event he could have raised these issues on his first two section 440.10 motions. (Id. at ¶ 11 & Ex. 6).

Petitioner sought leave to appeal the denial of the third motion, a request that the Appellate Division, First Department, granted on March 25, 1999. At the same time the court ordered that appeal consolidated with Watson's direct appeal from his conviction, which was pending in that court. (Id. at ¶ 12 & Ex. 8).

At about the same time, petitioner filed a pro se petition for a writ of habeas corpus in the State Supreme Court, Jefferson County. In this petition he asserted that the trial court had lacked jurisdiction because the indictment failed to allege all of the elements of the charged offenses and because the crime had not been committed in the Bronx. (Gianfrancesco Aff. at ¶ 13 & Exs. 9-11). By decision dated May 25, 1999, the court dismissed the

6

petition, finding that the indictment had properly alleged the crimes in question and had alleged facts reflecting that the crimes had been committed in the Bronx. The court also found that some of petitioner's claims could have been asserted on direct appeal or on a section 440.10 motion. (Id. at ¶ 14 & Ex. 12).

Petitioner appealed from this decision. (Id. at ¶ 15 & Exs. 13-14). On May 10, 2000, the Appellate Division, Fourth Department, affirmed, holding that the trial record "establishes his commission of the offenses, or at least elements thereof, in Bronx County." (Id. at ¶ 16 & Ex. 15); People ex rel. Watson v. Albaugh, 272 A.D.2d 897, 708 N.Y.S.2d 655 (4th Dep't 2000). Petitioner then sought, and was denied, leave to appeal to the New York Court of Appeals from that affirmance. (Id. at ¶ 17 & Ex. 16); People ex rel. Watson v. Albaugh, 95 N.Y.2d 758, 713 N.Y.S.2d 522 (2000).

Meanwhile, Watson was pursuing his direct appeal in the First Department. In December 2000, his attorney filed a brief asserting three grounds for reversal. He first attacked the refusal of the trial court to give the jury a verdict sheet that explicitly mentioned that the jury could convict on the larceny count on either of two theories, that is, grand larceny by false pretenses or by false promises. In this section of his brief, he complained as well that the verdict sheet used had not required unanimity

among the jurors as to the theory of conviction. (Gianfrancesco Aff. at ¶ 18 & Ex. 17 at 9-16). Second, he argued that the trial judge had improperly allowed the prejudicial joinder of two unrelated charges for joint trial. (Id. at ¶ 18 & Ex. 17 at 17-21). Third, the petitioner challenged the trial court's denial of his third section 440.10 motion. (Id. at ¶ 18 & Ex. 17 at 22-25).

The Appellate Division affirmed on June 21, 2001. In doing so the court held that there was no need for the verdict sheet to have referred to the two different larceny theories and that Watson's jury-unanimity argument was unpreserved. The court further held that the joinder claim was unpreserved and that the denial of the section 440.10 motion had been proper since the claims it raised were reviewable on direct appeal. People v. Watson, 284 A.D.2d 212, 728 N.Y.S.2d 9, 10 (1st Dep't 2001).

Although Watson was released from prison to parole on August 2, 2001 (Gianfrancesco Aff. at ¶ 20), he subsequently sought leave to appeal from the First Department's affirmance to the New York Court of Appeals, pressing the same arguments as he had advanced before the Appellate Division. (Id. at Ex. 20). That Court denied the application on October 24, 2001. (Id. at ¶ 21 & Ex. 21); People v. Watson, 97 N.Y.2d 643, 735 N.Y.S.2d 501 (2001).

Having been rebuffed in state court, Watson turned to this court, filing a petition for a writ of habeas corpus.

II. <u>Analysis</u>

Respondent seeks dismissal of the petition. It contends that petitioner failed to exhaust his state-court remedies with respect to three of the four claims, and that those claims should be deemed procedurally barred because petitioner has no further state-court remedies available. Respondent further asserts that all of the claims are either meritless or not of constitutional dimension.

We conclude that all of the claims are either procedurally barred or meritless.

A. <u>Legal Standard: Exhaustion and Procedural Bar</u>

The habeas statute provides that a federal court may not grant a writ of habeas corpus unless the petitioner has exhausted his remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts his state-court remedies by "fairly present[ing]" each federal claim for relief to the highest state court capable of review. <u>See</u>, <u>e.g.</u>, <u>Baldwin v. Reese</u>, 541 U.S. 27, 29, 32 (2004); <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 808-09

(2d Cir. 2000) (quotations omitted). "[F]ederal courts will not consider a constitutional challenge that has not first been 'fairly presented' to the state courts." <u>Ayala v. Speckard</u>, 89 F.3d 91, 94 (2d Cir. 1996)(quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)) <u>vacated on other grounds by reh'g en banc</u>, 131 F.3d 62 (2d Cir. 1997). Such fair presentation requires that the petitioner assert in state court the same legal theory and premise it on essentially the same body of facts as he invokes in federal court. <u>See</u>, <u>e.g.</u>, <u>Gray v. Netherland</u>, 518 U.S. 152, 163 (1996); <u>Grey v. Hoke</u>, 933 F.2d 117, 119-20 (2d Cir. 1991). Moreover, in presenting his claim to the state courts he must make clear that he is asserting a federal claim and not merely one that rests on a state-law theory. <u>See</u>, <u>e.g.</u>, <u>DiSimone v. Phillips</u>, 461 F.3d 181, 190 (2d Cir. 2006); <u>see also</u> <u>Howell v. Mississippi</u>, 543 U.S. 440, 443-44 (2005); <u>Baldwin</u>, 541 U.S. at 32; <u>Levine v. Commissioner of Corr. Servs.</u>, 44 F.3d 121, 124-26 (2d Cir. 1995).[1]

If a petitioner has failed to exhaust a claim but no longer has an avenue for asserting the claim in state court, the habeas court must deem the claim exhausted and subject to procedural-bar analysis. <u>See</u>, <u>e.g.</u>, <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32, 750

---

[1] The Second Circuit has recently held that a petitioner may satisfy this requirement by articulating a state-law claim that shares the same legal standard as a federal claim. <u>See</u> <u>Jackson v. Edwards</u>, 404 F.3d 612, 620-22 (2d Cir. 2005).

(1991); Grey, 933 F.2d at 120. See also DiSimone, 461 F.3d at 190. If the petitioner can no longer raise his claim in state court, the federal court is precluded from reviewing that claim on the merits unless the petitioner can demonstrate cause for the default and actual prejudice, or else show that a failure to consider his claim would result in a fundamental miscarriage of justice. See, e.g., Coleman, 501 U.S. at 750.

Cause may be demonstrated by showing "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by [state] officials' . . . made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." Murray v. Carrier, 477 U.S. 478, 488 (1986)(citing Reed v. Ross, 468 U.S. 1, 16 (1984), and quoting Brown v. Allen, 344 U.S. 443, 486 (1953)). To demonstrate prejudice, a habeas petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982)(emphasis in original). If the petitioner does not adequately show cause for the procedural default and prejudice, he may still obtain federal review of his habeas claim if he satisfies the miscarriage-of-justice exception. See, e.g., Strogov v. Att'y Gen.

of N.Y., 191 F.3d 188, 193-94 (2d Cir. 1999). This exception is applicable where petitioner can demonstrate that "because of a constitutional violation[,] a person who is actually innocent has been convicted and incarcerated." Id. In such a case, petitioner "must show 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence' presented in his habeas petition."[2] Calderon v. Thompson, 523 U.S. 538, 559-60 (1998)(quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). See, e.g., Edwards v. Fischer, 414 F. Supp. 2d 342, 352 (S.D.N.Y. 2006). Such a showing is considered a "gateway" to getting habeas claims reviewed on their merits despite the procedural bar. See, e.g.,

---

[2] If petitioner were challenging the harshness of the sentence received as erroneously based upon some mistaken factual predicate rather than asserting innocence as to the underlying crime, the standard in this circuit would be more stringent -- petitioner would then need to show by clear and convincing evidence "that he is actually innocent of the act on which his harsher sentence was based." Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 171-72 (2d Cir. 2000)(extending "actual innocence" exception to non-capital sentencing errors)(citing Sawyer v. Whitley, 505 U.S. 333, 348 (1992)). But see Dretke v. Haley, 541 U.S. 386, 393-94 (2004)(declining to resolve the conflict among the circuits regarding whether "to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error"). Watson does not claim that he is innocent of some act on which the restitutionary provision of his sentence alone was based, although the double-jeopardy claim is framed as a challenge to a portion of his sentence. The language in his papers, moreover, if anything, cites problems with the evidence presented on the underlying crime. In any event, the normal scenario in a non-capital case is that a claim of "actual innocence . . . means simply that defendant did not commit the crime," Poindexter v. Nash, 333 F.3d 372, 381 (2d Cir. 2003), triggering the less stringent "more likely than not" standard.

<u>House v. Bell</u>, 126 S. Ct 2064, 2077 (2006) ("A petitioner's burden at the gateway stage is to demonstrate that more likely than not . . . any reasonable juror would have reasonable doubt."); <u>Doe v. Menefee</u>, 391 F.3d 147, 161 (2d Cir. 2004)("[A] petitioner may use his claims of actual innocence as a 'gateway,' or a means of excusing his procedural default, that enables him to obtain review of his constitutional challenges to his conviction.")(citing <u>Schlup</u>, 513 U.S. at 315-17).


    B. <u>Assessment of Petitioner's Claims</u>


    1. <u>The Double Jeopardy Claim</u>


    Petitioner's first claim is that the trial court's decision to require that he serve the maximum prison term of seven years if he failed to pay restitution violated his rights under the Double Jeopardy Clause of the Fifth Amendment. In pressing this claim, petitioner appears to make two points. First, he suggests that once the trial court entered judgment on April 16, 1998, it could not then later impose an additional penalty by requiring restitution. Second, he argues that the amended judgment, insofar as it exposed him to a seven-year term, was inconsistent with the New York sentencing statute, which limits the court's authority to imposition of a maximum sentence of three and one-half to seven

13

years, thus leaving the Parole Board with the discretion to determine whether he must serve more than three and one-half years. Respondent argues that Watson failed to exhaust his state-court remedies for this claim and that it is now procedurally barred.

We conclude that petitioner's double-jeopardy claim is procedurally barred. We therefore do not address the merits of the claim.

Petitioner failed in two respects to exhaust the state-court remedies available for his double-jeopardy claim. He never presented it in a procedural setting in which the state courts would consider its merits, and he never articulated the claim in a manner designed to suggest that there was a federal constitutional component to his attack on the restitution aspect of the sentence. Each of these failings is tantamount to a failure to exhaust.

Watson mentioned the sentencing issue only in his application for leave to appeal the denial of his third 440.10 motion and in his reply in support of his state habeas petition. (Gianfrancesco Aff., Ex. 7 at ¶ 5(K) & Ex. 11 at ¶ 1). His attempt to raise this issue by these two procedural vehicles was insufficient to preserve it for state court consideration.

14

First, under New York law an issue that "could have been raised on direct appeal, but was not . . . cannot be raised in a collateral attack pursuant to CPL § 440.10." Bond v. Walker, 68 F. Supp. 2d 287, 294, 295 n.3 (S.D.N.Y. 1999), aff'd mem., 242 F.3d 364 (2d Cir. 2000). We see no reason –– and Watson does not offer any –– for his failure to raise this issue on direct appeal. If it had been raised in one of his motions to vacate, it would presumably have been rejected along with his other claims in those motions because it could have been included in Watson's direct appeal. In any event, petitioner also failed to raise his double-jeopardy claim in his various collateral attacks via motions to vacate –– he only mentioned the issue of restitution, which forms the basis of his double-jeopardy claim, in his application for leave to appeal the denial of the third of those motions. This request for discretionary review does not constitute fair presentation of the claim to the state courts. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989)("[I]t was error for the Court of Appeals to rest a conclusion of exhaustion upon respondent's presentation of his claims in petitions for allocatur."); Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000)("Presenting a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers

15

it.").[3]

The state habeas petition was also a defective measure for raising the double-jeopardy issue, since it had been asserted on direct appeal, as the Jefferson County court noted. (Gianfrancesco Aff., Ex. 12 at 3 (citing People ex rel. White v. LaVallee, 51 A.D.2d 1092, 381 N.Y.S.2d 586 (4th Dep't 1976))). In any event, Watson mentioned it only in his state habeas reply papers, and an issue "is not properly presented to the reviewing court" when it is raised for the first time in reply papers. Lurie, 228 F.3d at 124 (citing People v. Ford, 69 N.Y.2d 775, 777, 513 N.Y.S.2d 106 (1987)).

In sum, Watson failed to present the restitution argument in a procedural manner acceptable to the state courts, thus ensuring that they would not consider its merits. Hence, he has not exhausted his state-court remedies. See, e.g., Castille, 489 U.S. at 351; Lurie, 228 F.3d at 124.

Petitioner equally failed to exhaust his state remedies because he did not present his argument in federal constitutional

---

[3] The consolidation of the appeal of the motion to vacate and the direct appeal does not change this analysis. (See Gianfrancesco Aff., Ex. 8). The Appellate Division dealt with the claims in each separately in its order, and did not address the issues of restitution or double jeopardy. (See id., Ex. 19).

terms in his application for leave or in his state habeas reply. Indeed, his arguments -- to the extent that they could even be understood -- appeared to rest solely on the contention that the trial court had violated state law in some unspecified manner. Where petitioner alluded to some problem with the restitutionary component of his sentence in his application for leave, he cited a potpourri of New York statutory and case law, as well as a Colorado statute. (See Gianfrancesco Aff., Ex. 7 at ¶ K). In the next paragraph, petitioner cited two Supreme Court cases that discuss double jeopardy in factually dissimilar contexts, and he stated only that New York law "prohibits the prosecution from retrying any count that has been dismissed on the grounds of legal insufficiency." (Id. at ¶ L). Petitioner's two citations to Supreme Court cases are the sole references to the constitutional protection against double jeopardy, and they are provided without any factual premise whatsoever to connect the constitutional analysis in those cases to the facts of petitioner's case. Similarly, in his habeas reply, petitioner failed to articulate a double-jeopardy claim -- he took issue with the restitutionary requirement but seems to associate that complaint with his allegation that "the prosecution did not prove all of the necessary elements." (Id. at ¶ 1).

These modes of argument were insufficient to notify the state

17

courts that Watson intended to press a claim of constitutional dimension, much less a specific claim of double jeopardy, and hence -- even if presented to the state court using procedurally acceptable means -- his arguments would not have satisfied the statutory exhaustion requirement. See, e.g., DiSimone, 461 F.3d at 190 (citations omitted); Daye v. Attorney General, 696 F.2d 186, 191-94 (2d Cir. 1982)(en banc). Cf. Lewis v. Batista, 2002 WL 31202712, at *6 (S.D.N.Y. Aug. 30, 2002)("While . . . reliance on federal case law employing a constitutional analysis is a permissible method of exhausting a claim, it does not mean that a passing reference to a federal case, in a discussion focused entirely on state law, and where the federal case does not stand for the specific proposition upon which Petitioner bases his claim for habeas relief, is sufficient to fairly apprise the state court of the . . . violation now asserted.")(citing Petrucelli v. Coombe, 735 F.2d 684, 689 (2d Cir. 1984))(internal citations omitted).

Although the double-jeopardy claim is unexhausted, New York procedural rules now bar Watson from raising it. He has already completed the one direct appeal to which he is entitled, see Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001), and collateral review in state court is barred because "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted" him to raise this claim on direct appeal. See N.Y. Crim.

Proc. Law § 440.10(2)(c). Cf. Morales v. Sabourn, 2002 WL 32375006, at *11 (S.D.N.Y. Apr. 20, 2002)(record supporting double-jeopardy claim was available to petitioner at time of direct appeal).[4]

Federal courts may not review claims that are procedurally precluded from state-court review unless the petitioner can show both "cause for the default and prejudice or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio, 269 F.3d at 90 (citing Coleman, 501 U.S. at 748-50); See also Dretke, 541 U.S. at 393 ("[W]e have recognized an equitable exception to the bar when a habeas applicant can demonstrate cause and prejudice for the procedural default."). Watson does not attempt to show cause for his procedural default or resultant prejudice, nor does he demonstrate that a miscarriage of justice will result if this court declines to review the double-jeopardy claim. See Coleman, 501 U.S. at 749-50. He was given sufficient opportunity to raise this claim on his state court appeal, and he failed to do so. Hence he fails the cause test. Additionally, he cannot show prejudice, much less that a failure by this court to consider his

_____

[4] Petitioner rests his double-jeopardy claim on imposition of the condition that he pay restitution or serve the maximum sentence of seven years. Because this condition was imposed in July of 1998, petitioner would have had access to the record supporting his double-jeopardy claim certainly by the time he submitted his brief on the direct appeal in December of 2000. (See Gianfrancesco Aff., Ex. 17).

challenge to the sentence would constitute a miscarriage of justice. He was in fact released on parole after his service of the minimum three and one-half years, and thus was never subjected to the seven-year term of which he complains. Moreover, he offers no new evidence on which to base any discernible suggestion of actual innocence.

Thus, Watson's double jeopardy claim is procedurally barred from habeas review.

2. <u>Prosecutorial Misconduct</u>

Petitioner's second claim is based on a set of allegations to the effect that the prosecutor allowed a key witness -- Ms. Ann Cullen, a representative of Chase Manhattan Bank -- to perjure herself repeatedly before the grand jury and then hid this falsity from petitioner and from the court. (Pet. at 5-6; Reply at 1, 3-10). Petitioner never mentioned these specific allegations to the state courts, although he made general and conclusory references in his first two section 440.10 motions to the use of "material evidence known by prosecutor or court to be false before judgment." (Gianfrancesco Aff., Ex. 1 at 1 & Mem. of Law at 1; Ex. 3 at 1). He did not seek leave to appeal from the denial of those two motions.

Under these circumstances, respondent argues that this claim is procedurally barred, and we agree. To exhaust state court remedies, as noted, the petitioner must comply with the procedural requirements of the State so that the state courts will be presented with an opportunity to address the merits of the claim. By simply listing a boilerplate category of objection to his conviction in the first two motions to vacate, Watson failed to present a litigable claim to the state trial court, and accordingly the court denied the motions as procedurally defective.[5]   This manner of proceeding does not offer a basis for state-court exhaustion. <u>See</u>, <u>e.g.</u>, <u>Grey</u>, 933 F.2d at 119-20 (petitioner must apprise state courts of factual premise for his claim); <u>Morgan v. Jackson</u>, 869 F.2d 682, 684 (2d Cir. 1989); <u>Pineda v. Miller</u>, 2006 WL 2239105, at *1 (E.D.N.Y. Aug. 4, 2006).

In addition, if the first court to hear the claim denies it, the defendant will not be deemed to have exhausted his state-court remedies unless he pursues such discretionary review as state law makes available to him. <u>See</u> <u>generally</u> <u>Baldwin</u>, 541 U.S. at 29;

---

[5] The first motion to vacate was denied as "not contain[ing] sworn allegations substantiating or tending to substantiate all the essential facts" as required under N.Y. Crim. Proc. Law § 440.30(4)(b). (Gianfrancesco Aff., Ex. 2). His second 440.10 motion was denied for this reason and because his allegations could have been "adequately reviewed upon his direct appeal" (<u>id.</u> at Ex. 4), making denial of the motion mandatory under N.Y. Crim. Proc. Law § 440.10(2).

<u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845-48 (1999). Since Watson failed to seek leave to appeal the denial of the first two section 440.10 motions, even if his boilerplate language had sufficiently presented the issue of prosecutorial misconduct, he would have failed in this respect as well to exhaust this particular claim.[6] Petitioner's brief on his direct appeal also failed to argue this claim of prosecutorial misconduct. (<u>See</u> Gianfrancesco Aff., Ex. 17).[7]

Petitioner's failure to exhaust this claim leads again to procedural-bar analysis and the conclusion that the claim is procedurally barred. As a practical matter, he has no current state-court remedies. He has completed his one direct appeal and he has already filed three section 440.10 motions, all of which were denied (including one that was reviewed as well on appeal). Moreover, the pertinent provision of the New York Criminal

---

[6] Watson successfully sought leave to appeal the denial of his third section 440.10 motion, but that motion did not mention a claim of prosecutorial misconduct.

[7] Because the direct appeal and the appeal of the third motion to vacate were consolidated (<u>see</u> Gianfrancesco Aff., Ex. 8), petitioner's brief addressed the denial of the motion to vacate as well as the claims made in Watson's direct appeal. In the discussion of the denial of the motion to vacate, petitioner included language alluding to prosecutorial misconduct or misrepresentation as grounds generally for a section 440.10 motion (<u>see id.</u> at 22), but the motion itself did not allege this claim and petitioner clearly based his last 440.10 motion on "lack of jurisdiction and for insufficiency of grand jury evidence." (Gianfrancesco Aff., Ex. 5 at 6).

Procedure Law provides that the serial filing of motions when the ground raised in a later motion could have been included in an earlier one is a basis for denial. N.Y. Crim. Proc. Law § 440.10(3)(c)(court may deny motion asserting claim that could have been raised in earlier motion; court may grant such a motion, if meritorious, "in the interest of justice and for good cause shown"). See Peter Preiser, Practice Commentaries to N.Y. Crim. Proc. Law § 440.10 at 251 (McKinney's 2005). Indeed, the trial court denied petitioner's third motion in part because his claims could have been asserted on his prior motions. Since petitioner offers no justification for his failure to include this specific claim in any of his prior motions, it follows that the state court would almost certainly deny a fourth motion to vacate if he made one now.

In any event, under New York law the state court is required to deny any further motions to vacate that petitioner may make on the basis of prosecutorial misconduct because that claim could have been brought on direct appeal -- nothing in petitioner's arguments or in the record indicates that the underlying facts of petitioner's prosecutorial misconduct claim were not available to him at the time of that appeal. See N.Y. Crim. Proc. Law § 440.10(2)(c). See, e.g., Hogan v. West, 448 F. Supp. 2d 496, 506 (W.D.N.Y. 2006)("[A] collateral motion pursuant to C.P.L. § 440.10

would be futile because the motion court is statutorily mandated to deny the claim of prosecutorial misconduct on the basis of C.P.L. § 440.10(2)(c) because the underlying facts were contained within the trial transcript and therefore evident on the record.").

Petitioner does not attempt to show cause for the procedural default on this claim, any prejudice resulting from the alleged violation, or that a failure to review it would result in a miscarriage of justice. Hence the claim is procedurally barred.

Finally, even if petitioner were to demonstrate cause and prejudice for his procedural default on the prosecutorial misconduct claim, it appears that his complaints concern alleged misconduct before the grand jury. We therefore would be foreclosed from review of the claim since "a claim of prosecutorial misconduct [in grand jury proceedings] fails because 'a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment.'" Crawford v. Williams, 2003 WL 21344539, at *2 (S.D.N.Y. June 10, 2003)(quoting United States v. Eltayib, 88 F.3d 157, 173 (2d Cir. 1996)). See, e.g., Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); Neloms v. Brown, 2007 WL 809703, at *10 (S.D.N.Y. March 16, 2006). See also United States v. Mechanik, 475 U.S. 66, 70 (1986).

3. <u>The Siting of the Trial in the Bronx</u>

     Petitioner repeatedly asserted in state court, as he does here, that the trial court lacked jurisdiction over his case because the crime was committed in counties other than the Bronx. This claim must fail because it does not present a question of federal constitutional magnitude.

    The determination of proper venue for a state criminal trial is a matter of state law, and hence is not cognizable in a habeas proceeding. <u>See</u>, <u>e.g.</u>, <u>Lugo v. Costello</u>, 1996 WL 1086363, at *4 (E.D.N.Y. Sept. 10, 1996); <u>Blaich v. County of Putnam</u>, 852 F. Supp. 249, 251 (S.D.N.Y. 1994). In any event, the state courts found that -- consistent with the requirements of the state venue provision, N.Y. Crim. Proc. Law § 20.40 -- the evidence reflected that one or more elements of the crime had taken place in the Bronx. (<u>See</u>, <u>e.g.</u>, Gianfrancesco Aff., Exs. 12 at 2 & 15). Petitioner does not demonstrate that this finding was in any respect unreasonable in view of the record before the state courts. <u>See</u> 28 U.S.C. § 2254 (d)(2) & (e)(1) (requiring deference by habeas court to state-court findings).

4. <u>Sufficiency of the Evidence</u>

For his last claim Watson asserts that the trial evidence was not sufficient to demonstrate his guilt beyond a reasonable doubt. Respondent argues that he failed to exhaust his state court remedies on this claim.

Petitioner asserted this argument only in his application for leave to appeal from the denial of his third section 440.10 motion (<u>see</u> Gianfrancesco Aff., Ex. 7 at ¶¶ G-H), and in his reply on his state habeas petition (<u>see</u> <u>id.</u>, Ex. 11), neither of which is an adequate method of presenting the issue to the state courts.[8] <u>See</u>

---

[8] Although the third 440.10 motion to vacate repeated the elements of the crime and asserted several times that the evidence did not support each element, these assertions seemed to have been offered only in support of the contention that the Bronx did not have jurisdiction over the petitioner's case –– Watson seemed to argue that the elements of the crime were not connected to the Bronx, not that the evidence was insufficient to support each element of the crime more generally. (<u>See</u>, <u>e.g.</u>, Gianfrancesco Aff., Ex. 5 at ¶ 6). In any event, we have already concluded both that state venue is not a cognizable claim on federal habeas and that the motion to vacate was denied in large part because all of the issues it mentioned could have been brought on direct appeal as mandated by New York law. The latter would also be the case with any evidence-insuffficiency claim that could possibly be discerned in Watson's third 440.10 motion.

Also notable is Watson's summary of the bases for his third motion to vacate: "Defendant now moves to dismiss the indictment for lack of jurisdiction and for insufficiency of grand jury evidence." (<u>Id.</u>, Ex. 5 at 6). Although the motion seems overwhelmingly focused on the issue of jurisdiction, petitioner cited insufficiency of the evidence in grand jury proceedings specifically. As discussed above, <u>supra</u> Part II.B.2, defects in

<u>supra</u> pp. 13-16. Moreover, although the State itself raised the issue on Watson's appeal of right to the Appellate Division (Respt.'s Br. at 8-9) -- and even assuming that this was adequate to present the issue to that court -- Watson did not assert an evidentiary challenge when he sought leave to appeal to the New York Court of Appeals. (<u>See</u> Gianfrancesco Aff., Ex. 20). In short, the claim was not exhausted.

Petitioner has no available state-court remedies left to him since he has concluded his direct appeal, and section 440.10 relief is unavailable because he could have raised the issue on direct appeal, as well as in his several prior 440.10 motions. As for the procedural-bar question, Watson does not demonstrate cause, since he offers no basis to justify his failure to raise the issue on his direct appeal. Moreover, he cannot demonstrate that the failure to consider the issue now would  constitute a fundamental miscarriage of justice -- he puts forward no new evidence or arguments as to his actual innocence.

_____

grand jury proceedings -- such as insufficient evidence to support indictment -- are remedied by a petit jury's later verdict, and thus such defects are not cognizable on habeas review. <u>Lopez</u>, 865 F.2d at 32.

Finally, with regard to petitioner's state habeas reply, it is not entirely clear whether he raised a claim of insufficient evidence solely for indictment or for conviction therein.(<u>See</u>, <u>e.g.</u>, Gianfrancesco Aff., Ex. 11 at ¶ 5). Again, of course, only the latter would be cognizable on federal habeas review if not for it having been procedurally defaulted.

Indeed, petitioner's claim is entirely groundless. The trial evidence showed that he had possession of travelers' checks totaling $2,100.00 that he gave to his girlfriend, Ms. Bryant, to sign and cash. (Tr. 335-37, 388, 392-93). The testimony also revealed that those checks were discovered to be missing from the bank branch where Watson's wife worked, and that she admitted to a bank investigator that she had stolen the checks. (Tr. 437-42, 458, 542-43, 553). Hence a juror could reasonably find that Watson knowingly possessed stolen property with a value exceeding $1,000.00, in violation of N.Y. Penal Law § 165.45.

Similarly, the evidence in support of the charge of grand larceny was overwhelming. The testimony and documentary evidence revealed that Watson had concocted a scheme to steal money from Ms. Bryant, and that he had carried it out by falsely telling her that he had arranged for her to rent an apartment and then inveigling her to hand over to him $9,000.00 on the false pretense that he was going to use that money to secure the lease and fix up the apartment, when in fact the apartment was never available and Watson used the money for his own purposes. (Tr. 337-54, 365-70, 396-402, 422-25, 475-76, 484, 557-59, 577-80). Since the evidence permitted a trier of fact to find that he had stolen property from Ms. Bryant in excess of $3,000.00, in violation of Penal Law § 155.35, petitioner's challenge to this conviction is groundless.

CONCLUSION

For the reasons noted, we conclude that petitioner's claims are procedurally barred or meritless. Accordingly, we recommend that the writ be denied and the petition dismissed with prejudice.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Deborah A. Batts, Room 2510, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985), reh'g denied, 474 U.S. 1111 (1986); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: New York, New York**
      **May 29, 2007**

                              **RESPECTFULLY SUBMITTED,**

                              **MICHAEL H. DOLINGER**
                              **UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed
this date to:

Mr. Joseph Watson
1591 Fulton Avenue
Apartment 3B
Bronx, New York 10457

Raffaelina Gianfrancesco, Esq.
Assistant District Attorney
   for Bronx County
198 East 161st Street
Bronx, New York 10451

                              30